AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Apple iPhone 16 Pro Max, currently in custody of the FBI at 10385 Vista Sorrento Parkway, San Diego, CA 92121 | ) ) ) ) ) ) )  Case No.  **25-mj-00122-KSC** |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 371 | Conspiracy |
| 42 USC § 1320a-7b(b)(1)(A) | Payment of illegal renumeration |
| 42 USC § 1320a-7b(b)(2)(A) | Offer of illegal remuneration |
| 18 USC § 1347 | Health care fraud |
| 18 USC § 1956(a)(1)(B)(i) | Concelment money laundering |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: ____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Amanda Riley Sharp Glenn*
*Applicant's signature*

Amanda Riley Sharp Glenn, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__celluar telephone__ *(specify reliable electronic means)*.

Date: 1/9/2025

*Judge's signature*

City and state: San Diego, California    Hon. Karen S. Crawford, United State Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

    A black Apple iPhone 16 Pro Max, model number A3084 ("**Target Device**").

The **Target Device** is currently in custody of the FBI at 10385 Vista Sorrento Parkway, San Diego, California 92121.

**ATTACHMENT B**

Authorization to search the electronic device(s) described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the electronic device(s) for evidence described below.  The seizure and search of the electronic devices shall follow the search methodology described in the affidavit in support of the warrant.

The evidence to be seized from the electronic device(s) will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, and location data, for the period of **January 1, 2021 to January 8, 2025:**

    a.  tending to indicate efforts involving:

    i.  obtaining, receiving, supplying, requesting, paying for and inquiring about DME prescriptions signed by telehealth doctors;

    ii.  the negotiation, payment, purchase, documentation, or operation of any DME company;

    iii.  enrollment in Medicare, changing enrollment, signing of Medicare documents, use of nominee owners;

    iv.  submitting claims to Medicare, and Medicare guidelines, regulations, manuals, and correspondence concerning claims submitted to Medicare;

    v.  invoices, spreadsheets, ledgers, transaction records, financial statements, bank records concerning monies paid by Medicare and the transfer of such funds to others;

13

  b. communications, records, and attachments tending to identify others involved in the activities in paragraph A above;

  c. communications, records, and attachment that provide context to any communication described above, including those:

    i. tending to identify the user of, or persons with control over or access to, the **Target Device**, including the telephone number associated with the Target Device, or tending to authenticate or identify any person associated with any of the records identified in any of the preceding paragraphs; or

    ii. tending to identify other facilities, storage devices, or services, such as email addresses, IP addresses, phone numbers, or evidence of paired devices, that may contain electronic evidence described in any of the preceding paragraphs; and

    iii. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

limited to items which constitute evidence of violations of 18 U.S.C. § 371 (conspiracy), 42 U.S.C. § 1320a-7b(b)(1)(A) (payment of illegal renumeration), § 1320a-7b(b)(2)(A) (offer of illegal remuneration), 18 U.S.C. § 1347 (health care fraud), and 18 U.S.C. § 1956(a)(1)(B)(i) (concealment money laundering).

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Amanda Riley Sharp Glenn, being duly sworn, state:

**AFFIANT**

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since March 2024. I am currently assigned to the Criminal Division, White Collar Crime – Health Care Fraud squad. My primary assignment is to investigate health care fraud and related matters. My duties as a SA include reviewing health care records, analyzing billing records, and interviewing witnesses, victims, and subjects. I have been a Registered Nurse ("RN") for approximately seven years. Prior to becoming an FBI Special Agent, I worked as a RN in the Intensive Care Unit ("ICU") and Cardiology Outpatient/Ambulatory. I have a Bachelor of Science in Nursing from the University of Southern Mississippi.

2. The following is based on conversations and communications with other participating law enforcement agents and the investigative findings from the primary case agent. The facts set forth in this Affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

3. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set

1

forth only facts necessary to establish foundation for the requested warrant. Dates and times are approximate.

4. Based on my training, the training and experience of other agents involved in the investigation, and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 371 (conspiracy), 42 U.S.C. § 1320a-7b(b)(1)(A) (payment of illegal renumeration), § 1320a-7b(b)(2)(A) (offer of illegal remuneration), 18 U.S.C. § 1347 (health care fraud), and 18 U.S.C. § 1956(a)(1)(B)(i) (concealment money laundering) (together, the **"Target Offenses"**), have been committed by FERNANDO VALENZUELA AYUB. There is also probable cause to search the **Target Device**, further described in Attachment A, for evidence of violations of the **Target Offenses**, as further described in Attachment B. Based on my training, and the training and experience of other agents involved in the investigation, cellular telephones can be used as a miniature computer which can contain information related to the investigation which can include communications with co-conspirators and medical providers, and Medicare enrollment documents, and DME documents.

5. Based on my training, experience, and consultations with law enforcement officers experienced in health care fraud and money laundering investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones and electronic devices (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as

2

emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searched of cellular telephones and electronic devices of individuals involved in health care fraud and money laundering may yield evidence:

    a. tending to indicate efforts involving:
        i. obtaining, receiving, supplying, requesting, paying for and inquiring about DME prescriptions signed by telehealth doctors;
        ii. the negotiation, payment, purchase, documentation, or operation of any DME company;
        iii. enrollment in Medicare, changing enrollment, signing of Medicare documents, use of nominee owners;
        iv. submitting claims to Medicare, and Medicare guidelines, regulations, manuals, and correspondence concerning claims submitted to Medicare;
        v. invoices, spreadsheets, ledgers, transaction records, financial statements, bank records concerning monies paid by Medicare and the transfer of such funds to others;

  b. communications, records, and attachments tending to identify others involved in the activities in paragraph A above;

  c. communications, records, and attachment that provide context to any communication described above, including those
        i. tending to identify the user of, or persons with control over or access to, the **Target Device**,

3

      including the telephone number associated with the Target Device, or tending to authenticate or identify any person associated with any of the records identified in any of the preceding paragraphs; or

  ii. tending to identify other facilities, storage devices, or services, such as email addresses, IP addresses, phone numbers, or evidence of paired devices, that may contain electronic evidence described in any of the preceding paragraphs; and

  iii. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PURPOSE OF AFFIDAVIT

6. This Affidavit is made in support of an application for a warrant to search and seize data from the following cellular telephone ("**Target Device**"), which was seized from FERNANDO VALENZUELA AYUB ("F. VALENZUELA") on December 9, 2024, incident to his arrest by FBI San Diego Special Agents.

  a. **Target Device**, a black Apple iPhone 16 Pro Max, model number A3084, is currently being held at the FBI San Diego Field Office at 10385 Vista Sorrento Parkway, San Diego, California 92121.

**STATEMENT OF PROBABLE CAUSE**

*Key Players and Entities*

7. According to Medicare enrollment records and witness interviews, JEANETT VALENZUELA AYUB ("J. VALENZUELA") owned or operated multiple durable medical equipment ("DME") companies in San Diego County. FERNANDO VALENZUELA AYUB ("F. VALENZUELA") likewise owned or operated multiple DME companies in San Diego County. F. VALENZUELA and J. VALENZUELA are siblings.

8. Medfina Medical Supply ("Medfina Medical"), located in San Diego County, California, operated as a DME provider and was approved by Medicare to supply medically necessary DME to individuals receiving Medicare benefits. F. VALENZUELA's signature appears on the Medicare forms as the authorized official and owner of Medfina. On or about January 21, 2021, F. VALENZUELA applied with Medicare to enroll Medfina Medical Supply Inc as a provider of DME. In the enrollment application, F. VALENZUELA gave his telephone number as (619) 609-4753 ("TEL-4753").

9. Bay Medical, located in Hillsborough County, Florida, operated as a DME provider and was approved by Medicare to supply medically necessary DME to individuals receiving Medicare benefits. F. VALENZUELA's signature appears on Medicare forms as an authorized official and owner of Bay Medical. In a Medicare enrollment record summary collected on November 5, 2024, TEL-4753 was provided as the contact info for F. VALENZUELA, who was listed as the CEO of Bay Medical.

10. SD Medical Equipment ("SD Medical"), formed in 2022 and located in San Diego County, California, operated as a DME provider

5

and was approved by Medicare to supply medically necessary DME to individuals receiving Medicare benefits. The signature of Person 3 appears on Medicare forms as the authorized official and owner.

### *The Indictment*

11. On November 21, 2024, a federal grand jury in the Southern District of California returned a one-count indictment charging F. VALENZUELA with violating Title 18, United States Code, Section 1956 (a)(1)(B)(i), concealment money laundering. On November 21, 2024, the Honorable Allison H. Goddard issued an arrest warrant for F. VALENZUELA, case number 24-cr-2488-DMS.

12. The indictment alleges that F. VALENZUELA, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, knowingly conducted a financial transaction affecting interstate and foreign commerce, that is, depositing a check for $128,000 issued from a bank account in the name of SD Medical Equipment, which involved the proceeds of a specified unlawful activity, that is, health care fraud in violation of Title 18, United States Code, Section 1347, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### **Valenzuela's Use of Target Device**

#### **Interview of CC1**

13. Agents had been investigating Co-Conspirator 1 ("CC1") and CC1's DME companies for a kickback and health care fraud scheme. In connection with the investigation in which he was a

target, CC1 agreed to provide information about others. CC1 explained to agents that he shut down his own DME companies in April 2019, and thereafter started creating and selling "turn-key" DME companies. He would take all the steps to open a DME business, which included securing a physical storefront to rent, setting up billing, submitting paperwork to Medicare, registering the business with the California Secretary of State, and setting up bank accounts in the name of the company. CC1 would then sell the "turn-key" business to others for approximately $50,000 to $60,000. CC1 said that F. VALENZUELA helped broker the sale of a DME company called SD Medical to another individual, Person 3. CC1 provided **TEL-4753** as the contact information he used to communicate with F. VALENZUELA.

**Interview of SILVA**

14. Jose Portilla ("PORTILLA") (charged elsewhere) was the CEO and owner of Best Lead Solution ("BLS"), a self-described "marketing company" located in Chula Vista. Kathie SILVA ("SILVA") (charged elsewhere) was an employee of BLS and assisted PORTILLA in operating BLS.

15. In connection with her own criminal case, SILVA agreed to provide information about others. SILVA explained that she, PORTILLA, and BLS worked with multiple DME companies operated by F. VALENZUELA and his sister J. VALENZUELA. SILVA confirmed that although the VALENZUELAs were not listed as the owners on paper for all the DME companies, they directed and controlled the activities of each company. SILVA also explained that BLS sold completed doctor's orders – which consisted of doctor's notes,

7

patient information, and a signed prescription -- to each of the Valenzuela DME Companies. SILVA admitted that selling these doctor's orders amounted to SILVA and PORTILLA receiving, and the VALENZUELAs paying, kickbacks for the referral of Medicare patients. According to SILVA, F. VALENZUELA was the brains of the operation and controlled the money to reinvest elsewhere, while J. VALENZUELA ran the office for each DME and was the day-to-day leader of the operation.

16. On November 25, 2024, SILVA provided **TEL-4753** as one of two telephone numbers that she associated with F. VALENZUELA.

17. According to sensitive financial information, as of October 16, 2024, **TEL-4753** is listed as an identifier for F. VALENZUELA.

18. On December 5, 2024, the Honorable Sheri Pym, United States Magistrate Judge, Central District of California, issued a warrant authorizing the disclosure of prospective cell site and phone location information for **TEL-4753**, believed to be the phone number associated with F. VALENZUELA.

19. On December 9, 2024, FBI Special Agents received cell site location for **TEL-4753**, which I believe corresponded with the location of the **Target Device**, that indicated F. VALENZUELA was traveling South from the Los Angeles area to San Diego. Agents conducted physical surveillance at F. VALENZUELA's residence in Chula Vista, California and observed F. VALENZUELA arrive at his residence, which was consistent with the cell site location for TEL-4753.

20. On December 9, 2024, FBI Special Agents arrested F. VALENZUELA on the arrest warrant issued pursuant to the indictment. Incident to the arrest, FBI Special Agents conducted a safety search of F. VALENZUELA and seized the **Target Device** from his pants pocket. There were no other telephones on F. VALENZUELA at the time of his arrest, and therefore I submit that TEL-4753 is the phone number associated with the **Target Device**.

21. Based on my training and experience, consultation with other law enforcement officers experienced in health care fraud and money laundering investigations, and all the facts and opinions contained in this affidavit, I believe that telephone numbers, contact names, email addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. Based on the information above, in particular the statements of CC1 and SILVA, I also believe that there is probable cause that F. VALENZUELA used the **Target Device** to communicate with others to further the **Target Offenses**. Based on the length of time of the fraud scheme and its ongoing nature, I request permission to search the **Target Device** for data from **January 1, 2021 up to and including January 8, 2025.**

### PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

22. It is not possible to determine, merely by knowing the cellular telephone's make, model, and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have

9

functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are no subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

25. Based on the foregoing, I have probable cause to believe that evidence of the **Target Offenses**, as further described in Attachment B, will be found upon the examination of the **Target Device**, as further described in Attachment A.

*Amanda Riley Sharp Glenn*
_____
AMANDA RILEY SHARP GLENN
Special Agent
Federal Bureau of Investigation

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1 on January _9_, 2025.

_____
HONERABLE KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

11